UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOVITA THOMAS-WILLIAMS,

            Plaintiff,

v.

MGM GRAND DETROIT LLC, a Delaware Limited Liability, MGM MIRAGE, INC., a Delaware Corporation, and JOSEPH DAVIS, an Individual,

            Defendants.

                                              /

CASE NO. 08-11030

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER MGM MIRAGE AND ITS ABSENCE AS AN INDISPENSABLE PARTY OR, IN THE ALTERNATIVE TO TRANSFER THIS ACTION TO THE <u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA</u>**

      Pending before the Court is Defendants' Joint Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction over MGM Mirage and its Absence as an Indispensable Party or, in the Alternative, to Transfer this Action to the United States District Court for the District of Nevada (Doc. No. 4). The Court heard oral argument on the merits of the personal jurisdiction motion, but a decision on the merits was adjourned without date, pending Plaintiff's request to file an amended complaint. After Plaintiff filed her amended complaint, Defendants moved the Court to strike it and compel Plaintiff to file the Amended Complaint that she provided in conjunction with her motion for leave to file the amended complaint. Defendants also requested sanctions. The Court denied those motions. For the reasons that follow, Defendants' Joint Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction over MGM Mirage and Its Absence as an Indispensable Party or, in the Alternative, to Transfer this Action to the United States District Court for the District

of Nevada is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff Jovita Thomas-Williams filed suit against MGM Grand Detroit, LLC ("MGM Detroit"), MGM Mirage, Inc. ("MGM Mirage"), and Joseph Davis, alleging retaliatory discharge and sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as well as Nevada and Michigan civil rights law. She added a breach of contract claim against Defendants MGM Mirage and MGM Detroit in her First Amended Complaint ("FAC").

The factual allegations are taken from the FAC. Thomas-Williams began working for MGM Detroit in January 2003 as Vice President of Human Resources. FAC, ¶¶ 38-39. The terms and conditions of her employment were covered by an employment agreement, which established a term of employment from January 6, 2003, through January 5, 2007. Id.

According to Plaintiff, the contract was tendered to her for review by MGM Mirage's Senior Vice President and Senior Counsel, Ms. James. Id., ¶ 40. While she worked in Detroit, she was subject to the control and direction of James, and MGM Mirage Senior Vice President of Human Resources, Cynthia Kiser Murphey, as well as George Boyer, the President and Chief Operating Officer of MGM Detroit. Id., ¶¶ 36, 40-41.

While she was working at MGM Detroit, Thomas-Williams alleges Davis sexually harassed her. Id., ¶ 43. Davis is a member of MGM Detroit's Board of directors and has an ownership interest in it. Id. Plaintiff alleges he was an agent of MGM Mirage. FAC, ¶ 12. In 2004, Plaintiff complained to George Boyer and J.D. Clayton, MGM Detroit's Executive Vice President of Operations, about Davis' conduct. Id., ¶ 46. Because neither

resolved her complaint, she reported her complaints to Kiser Murphey in 2004. Id., ¶ 56. According to the FAC, Kiser Murphey failed to "investigate, remediate or take any other action. . . ." Id., ¶ 57.

During the term of the employment agreement, on July 4, 2005, MGM Mirage hired Plaintiff to work as its Vice President of Labor Relations. Id., ¶¶ 59-60. Def.'s Ex. A 4. Plaintiff relocated to Las Vegas. She retained the same position and kept her original hire date of January 6, 2003. Id., ¶¶ 59-61. Defendants did not terminate, cancel, or modify Plaintiff's employment contract when she transferred to Las Vegas, and her employment continued under that agreement. Id., ¶ 62.

On July 7, 2005, MGM Mirage issued Thomas-Williams several policies, that she contends were incorporated into her employment agreement by reference, through section 5 of the employment contract,[1] including the "Zero Tolerance Harassment and Discrimination Policy." Id., ¶ 67, Ex. 6 to FAC. Among other things, the Zero Tolerance policy demands from employees,

> a. a positive work environment [that] includes a zero tolerance for sexual harassment and discrimination;"
>
> b. that if Plaintiff reported a complaint of sexual harassment of discrimination "[a] complete investigation will be conducted and appropriate action taken to correct the

---

[1] Section 5 reads: Policies and Procedures. You agree and acknowledge that you are bound by our policies and procedures as they may be modified and amended by us from time to time. In the event the terms in this agreement conflict with our policies and procedures, the terms of this Agreement shall take precedence. As you are aware, problem gaming and underage gambling can have adverse effects on individuals and the gaming industry as a whole,  You acknowledge that you have read and are familiar with our policies, procedures, and manuals and agree to abide by them. Because these matters are of such importance to us, you specifically confirm that you are familiar with and will comply with our policy of prohibiting underage gaming and of supporting programs to treat compulsive gambling.

situation;"

c. that "[a]n investigation is handled on a professional manner. . . ;" and

d. that "[a]ny form of retaliation against an employee who registers a complaint is strictly prohibited."

Id.

Plaintiff reported to Cynthia Kiser Murphey in her new position. She led and controlled collective bargaining activities for MGM Detroit under the direction and supervision of Kiser Murphey, Phyllis James, Gary N. Jacobs, MGM Mirage's Executive Vice President and General Counsel, and MGM Mirage's retained outside counsel. FAC, ¶ 70.

In November 2006, Plaintiff learned that Davis had communicated disparaging comments about her to MGM Mirage's Chairman and CEO, J. Terrence Lanni, and advocated that she be removed from leading collective bargaining activities on behalf of MGM Detroit. Id., ¶ 69. Plaintiff considered Davis' conduct to be a continuation of the retaliatory conduct that he engaged in during 2004, after she reported him. She complained about Davis to Kiser Murphey. Id., ¶ 72. MGM Mirage subsequently authorized an investigation of the complaint.

In January 2007, as Plaintiff's employment contract was set to expire, Kiser Murphey told Thomas-Williams that a new four-year term employment contract had been approved by Lanni, and Murren, MGM Mirage's President and CFO, and was awaiting final approval from a board member who was in the hospital. Id., ¶ 75. MGM Mirage and Plaintiff agreed to extend the term of Plaintiff's January 6, 2003, contract pending approval and execution of the new contact. Id., ¶¶ 76, 134. Plaintiff continued to be employed with the same title, job responsibilities, and performed the same work she had done since July 6, 2004. MGM

4

Mirage also compensated Plaintiff at the same salary and with the same fringe benefits until March 19, 2007, when she was terminated.

In May 2007, Plaintiff filed a complaint with the EEOC in Nevada. She subsequently received a Notice of Right to Sue, and filed her lawsuit in Wayne County Circuit Court. The action was removed.

In addition to her federal and state discrimination claims, in her FAC, Plaintiff alleges that MGM Mirage breached the employment agreement in four ways: (1) it failed to follow its policies and procedures when it failed to conduct a prompt, fair, and thorough investigation of Plaintiff's sexual harassment and retaliation complaints; (2) it failed to take remedial action against Davis for his sexual harassment and retaliation; (3) it terminated her employment in retaliation for her sexual harassment and retaliation complaints; and (4) it failed to pay her salary, maintain her insurance coverage, and allow her to vest her stock options from the date of her termination through January 5, 2008.

## II. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges the sufficiency of the jurisdictional facts regarding the existence of personal jurisdiction over a defendant. The plaintiff has the burden of establishing the existence of personal jurisdiction. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1151 (6th Cir. 1990). When a court decides whether it has personal jurisdiction on the basis of written submissions alone, the plaintiff "may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise . . . specific facts showing that the court has jurisdiction." Seras v. First Tennessee Bank Intel Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If a plaintiff's pleadings and affidavits state the facts with sufficient particularity, a court must ignore contrary

assertions by a defendant. Id. at 1215. "Dismissal is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).

Because this Court is relying only on the pleadings and affidavits of the parties, the plaintiff "need only make a prima facie showing of jurisdiction." Id. In the absence of an evidentiary hearing, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Id. The Court views the facts in the light most favorable to the nonmoving party. Seras, 875 F.2d at 1214.

### III. ANALYSIS

The parties dispute whether MGM Mirage has sufficient contact with Michigan to render the exercise of personal jurisdiction over it consistent with traditional notions of fair play and substantial justice. Defendants filed this motion before Plaintiff amended her complaint. Consequently, the arguments advanced are not focused on the issue of personal jurisdiction in light of the contractual claims.

"A federal district court sitting in diversity must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a nonresident defendant. However, constitutional concerns of due process limit application of this state law." Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991) (citations omitted). Thus, "[a] court has personal jurisdiction over a defendant if the defendant is amenable to service of process under the state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant due process." Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992).

Personal jurisdiction can be either general or specific, depending on the type of

minimum contacts. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). General jurisdiction depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant. In contrast, specific jurisdiction exposes the defendant to suit in the forum state only as to those claims that "arise out of or relate to" the defendant's contact with the forum. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

### 1. General Jurisdiction

Under MICH. COMP. LAWS § 600.711, general jurisdiction may be asserted over a corporation if: (1) the corporation was incorporated under Michigan law; (2) the corporation consented to the court's jurisdiction; or (3) the corporation carries on a continuous and systematic part of its general business within the state.

MGM Mirage asserts that it does not do business in Michigan. Further, it has no employees or offices here. Nevertheless, the Court finds it may exercise general jurisdiction over MGM Mirage, provided it consented to the court's jurisdiction. See § 600.711(2); Schmidt v. Wilbur, 775 F. Supp. 216, 219 (E.D. Mich.1991). One way a foreign corporation may consent to Michigan jurisdiction is through a forum selection and choice of law clause. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n. 14 (1985).

In this case, Plaintiff's employment contract specifically stated that any disputes with respect to the contract were to be litigated in Michigan. Although the parties dispute whether Plaintiff was "transferred" to MGM Mirage, the Personnel Action Notice attached to her First Amended Complaint confirms she was transferred from MGM Detroit. See FAC, Ex. 4. Thomas-Williams asserts that she continued to work under the terms of her

employment contract until she was terminated.  Therefore, the Court finds it may exercise personal jurisdiction over MGM Mirage relative to any contract claim.  Because personal jurisdiction is analyzed as to each claim against each defendant, the party challenging personal jurisdiction must do more than advance generic arguments about the claims.

The dispute here deals not only with a breach of contract, but also with federal statutory rights and state civil rights claims.  The federal statute at issue in this case does not order nationwide service of process, so personal jurisdiction is analyzed under the long-arm statute.   A contractually-based forum selection clause might also encompass tort claims if the tort claims ultimately depend on the existence of the contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract.  In this case Plaintiff asserts, in part, that she was terminated in violation of the contract because she reported harassment and retaliation by Davis.  She contends that MGM Mirage failed to comply with anti-discrimination policies that were incorporated into her contract. These considerations favor exercising personal jurisdiction over MGM Mirage inasmuch as the claims involve many of the same operative facts.

In addition, the Court finds that the common law doctrine of pendent personal jurisdiction, which acknowledges "the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts" is appropriate under the circumstances presented.  <u>J4 Promotions, Inv. V. Splash Dogs, LLC</u>, No. 08-CV-977, 2009 WL 385611 at \*\* 19, 20. (N.D. Ohio Feb. 13, 2009).  Accord <u>Jude v. First Nat'l Bank of Williamson</u>, 259 F. Supp.2d 586, 596 (E.D. Ky.

2003).

### 2. Indispensable party

Because the Court has not granted Defendants' request to dismiss MGM Mirage based on lack of personal jurisdiction, it declines to dismiss MGM Detroit or Davis under Fed. R. Civ. P. 19(b).[2]

### 3. Venue

In the alternative, MGM Mirage argues that the Court should transfer Plaintiff's claims to Nevada because venue is proper there under Title VII's venue provision..[3]

Congress has adopted special venue provisions for Title VII actions. Pursuant to the relevant statutory provisions, a Title VII action may be brought in any judicial district in which the discrimination is alleged to have been committed, in the judicial district in which the relevant employment records are maintained and administered, or in the judicial district

---

[2] Rule19 governs joinder of necessary and indispensable parties. FED. R. CIV P. 19(b).

[3] The venue provision reads in pertinent part as follows:

Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. **Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered**, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (emphasis added).

in which the aggrieved person would have worked but for the alleged discrimination. 42 U.S.C. § 2000e-5(f)(3). Title VII also makes clear that "[t]he provisions of section 2000e-5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder." 42 U.S.C. § 2000e-16(d). Accordingly, a Title VII lawsuit must be brought in one of the three judicial districts previously mentioned.

The plaintiff bears the burden of showing venue is proper. Although Defendants contends that the actions occurred in Nevada, in her Complaint, Plaintiff alleges that Davis harassed her in Michigan, and that he retaliated against her when he discovered that Plaintiff had complained about his conduct. This conduct all occurred in Michigan. Davis allegedly further retaliated in November 2006, and pushed to have Plaintiff removed from leading the collective bargaining activities on behalf of MGM Detroit.

The plain language of the first prong of the statute states that venue is proper in "[a]ny judicial district in the State in which the unlawful employment practice is alleged to have been committed." The language of the statute does not provide for venue where the effects of the alleged unlawful employment practices are felt. Nor does a straightforward and commonsense reading of the statute imply that venue is proper in any district where the alleged unlawful employment practice is implemented or its effects are felt. Therefore, under the plain, unambiguous language of the statute, venue is proper in Michigan

Nevertheless, Defendants request this matter be transferred to Nevada pursuant to 28 U.S.C. §1404(a) based on the convenience of the parties and the interests of justice. Generally, the party bringing a motion to transfer venue pursuant to FED. R. CIV. P. 12(b)(3) and 28 U.S.C. § 1404 bears the burden of proving that the transferee district is a more convenient forum for litigation of the action. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119

F.3d 688, 695 (8th Cir.), In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (on remand of Stewart v. Ricoh Corp., 487 U.S. 22 (1988)).

The factors that guide a district court's discretion when deciding whether to transfer a case include, (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp.2d 943, 957 (E.D. Mich. 2003).

Defendants maintain that the majority of the nonparty witnesses are residents of Nevada, that the relevant documents are located in Nevada, and that Nevada is the locus of the operative facts. Nevertheless, it would be more convenient for Plaintiff, who owns a home in Michigan, and the individual Defendant, who lives in Michigan, to litigate this lawsuit in Michigan. The nonparty witnesses identified by Defendants are employees and given the relationship between MGM Mirage and MGM Detroit, the inconvenience to these witnesses is minimal. Here, the parties contractually agreed to litigate any claim with respect to the contract in Michigan. Finally, many of the underlying events occurred in Michigan. Accordingly, the Court denies Defendants' request to transfer this action to Nevada.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss or transfer this action is **DENIED**.

**IT IS SO ORDERED.**

                                      s/Marianne O. Battani  
                                      MARIANNE O. BATTANI  
                                      UNITED STATES DISTRICT JUDGE

Date: March 31, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                      s/Bernadette M. Thebolt  
                                      Case Manager