**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOVITA THOMAS-WILLIAMS,

            Plaintiff,

v.

MGM GRAND DETROIT LLC, a Delaware Limited Liability, MGM MIRAGE, INC., a Delaware Corporation, and JOSEPH DAVIS, an Individual,

            Defendants.
_____/

CASE NO. 08-11030

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT MGM MIRAGE'S MOTION
TO DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIM**

Pending before the Court is Defendant MGM Mirage LLC's ("MGM Mirage") Motion to Dismiss Plaintiff's Breach of Contract Claim (Doc. No. 31). The Court heard oral argument on the motion, and at the conclusion of the hearing took this matter under advisement pending resolution of Defendants' motion for dismissal for lack of personal jurisdiction. For the reasons that follow, Defendant's motion is **GRANTED in part and DENIED in part.**

**I. FACTUAL BACKGROUND**

Plaintiff Jovita Thomas-Williams filed suit against MGM Grand Detroit, LLC ("MGM Detroit"), MGM Mirage, and Joseph Davis, alleging retaliatory discharge and sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as well as Nevada and Michigan anti-discrimination law. She added a breach of contract claim against Defendants in her First Amended Complaint ("FAC").

According to the FAC, Thomas-Williams began working for MGM Detroit in January 2003 as Vice President of Human Resources. FAC, ¶¶ 38-39. The terms and conditions of her employment were covered by an employment agreement, which established a term of employment from January 6, 2003, through January 5, 2007. Id.

On July 7, 2005, MGM Mirage issued Thomas-Williams several policies, that she contends were incorporated into her employment agreement by reference, through section 5 of the employment contract,[1] including the "Zero Tolerance Harassment and Discrimination Policy." Id., ¶ 67, Ex. 6 to FAC. Among other things, the Zero Tolerance policy provides,

> a. a positive work environment [that] includes a zero tolerance for sexual harassment and discrimination;"
>
> b. that if Plaintiff reported a complaint of sexual harassment of discrimination "[a] complete investigation will be conducted and appropriate action taken to correct the situation;"
>
> c. that "[a]n investigation is handled on a professional manner. . . ;" and
>
> d. that "[a]ny form of retaliation against an employee who registers a complaint is strictly prohibited."

Id.

In November 2006, Plaintiff learned that Davis had communicated disparaging

---

[1] Section 5 reads: Policies and Procedures. You agree and acknowledge that you are bound by our policies and procedures as they may be modified and amended by us from time to time. In the event the terms in this agreement conflict with our policies and procedures, the terms of this Agreement shall take precedence. As you are aware, problem gaming and underage gambling can have adverse effects on individuals and the gaming industry as a whole, You acknowledge that you have read and are familiar with our policies, procedures, and manuals and agree to abide by them. Because these matters are of such importance to us, you specifically confirm that you are familiar with and will comply with our policy of prohibiting underage gaming and of supporting programs to treat compulsive gambling.

comments about her to MGM Mirage's Chairman and CEO, J. Terrence Lanni, and advocated that she be removed from leading collective bargaining activities on behalf of MGM Detroit. Id., ¶ 69. Plaintiff considered Davis' conduct to be a continuation of the retaliatory conduct that he engaged in during 2004, after she reported him. She complained about Davis to her supervisor, Cynthia Kiser Murphey. Id., ¶ 72. MGM Mirage subsequently authorized an investigation of the complaint.

In January 2007, as Plaintiff's employment contract was set to expire, Kiser Murphey told Thomas-Williams that a new four-year term employment contract had been approved by Lanni, and Murren, MGM Mirage's President and CFO, and was awaiting final approval from a board member who was in the hospital. Id., ¶ 75. MGM Mirage and Plaintiff agreed to extend the term of Plaintiff's January 6, 2003, contract pending approval and execution of the new contact. Id., ¶¶ 76, 134. Plaintiff continued to be employed with the same title, job responsibilities, and performed the same work she had done since July 6, 2004. MGM Mirage also compensated Plaintiff at the same salary and with the same fringe benefits until March 19, 2007, when she was terminated.

In May 2007, Plaintiff filed a complaint with the EEOC in Nevada. She subsequently received a Notice of Right to Sue, and filed her lawsuit in Wayne County Circuit Court. The action was removed.

In addition to her federal and state discrimination claims, in her FAC, Plaintiff alleges that MGM Mirage breached the employment agreement in four ways: (1) it failed to follow its policies and procedures when it failed to conduct a prompt, fair, and thorough investigation of Plaintiff's sexual harassment and retaliation complaints; (2) it failed to take remedial action against Davis for his sexual harassment and retaliation; (3) it terminated

3

her employment in retaliation for her sexual harassment and retaliation complaints; and (4) it failed to pay her salary, maintain her insurance coverage, and allow her to vest her stock options from the date of her termination through January 5, 2008.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombley, 127 S.Ct. 1955, 1974 (2007). "Under general pleading standards, the facts alleged in the complaint need not be detailed, although 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Twombley, 127 S.Ct. at 1964-65.

## III. ANALYSIS

### A. Harassment Policy Claims

The parties contest whether Plaintiff's claims under the zero tolerance policy are in essence her Title VII claims, repackaged as a contractual dispute. The Zero Tolerance Policy was incorporated by reference through section 5 of the contract. In the policy, MGM Mirage committed to providing employees with a positive work environment, including a

zero tolerance policy for sexual harassment or discrimination.  Plaintiff alleges that despite this commitment, MGM Mirage did not follow the policy when Plaintiff made her complaint against Davis.  Specifically, Thomas-Williams asserts that MGM Mirage conducted an incomplete investigation of her allegations.  FAC ¶¶ 72-74, 77-79, 83-88; Ex. A-7, Investigative Report.

The Court finds the language of the agreement undermines Plaintiff's cause of action.  Paragraph 5 of the employment agreement reads:

> <u>Policies and Procedures.</u>
>
> You agree and acknowledge that you are bound by our policies and procedures as they may be modified and amended by us from time to time.  In the event the terms in this Agreement conflict with our policies and procedures, the terms of this Agreement shall take precedence

<u>See</u> Ex. A-1, Agreement at ¶ 5.  The "You" in paragraph 5 is defined as the employee in the preamble of the agreement, <u>Id.</u> ¶ 15.  So assuming that the contract was in force, the agreement imposes a duty on Plaintiff to abide by the Employer's policies and procedures.

The Court agrees with MGM Mirage that it is not contractually obligated by paragraph 5, and the breach of contract agreement based on this provision is not supported by a plain reading of the agreement.  There is no contention that the parties negotiated the policy as part of the hiring or transfer process.  In sum, the Court finds that Plaintiff cannot bring her harassment and retaliation claims under the guise of breach of contract.

**B.  Salary and Benefits Claim**

Although the parties' agreement had a specified end date of January 5, 2007, there is a dispute as to whether it was renewed. Plaintiff relies on Section 10.2.1 of the contract, which provided that in the event of a no cause termination, Plaintiff was to be treated as an inactive employee through the remainder of the extended term of her employment. In addition, she was to receive her salary for the remainder of the extended term, be continued as a participant in all health and insurance programs for the remainder of the extended term or until she became eligible for such benefits from another employer, whichever occurred first; and be allowed to continue to vest previously granted stock options through the remainder of the extended term of employment. Id. ¶¶ 139-140. According to Plaintiff, MGM Mirage failed to comply with these terms despite the fact that the parties had agreed that Plaintiff's existing contract would continue until a new agreement was signed.

MGM Mirage maintains that in the absence of a signed writing, which was required by paragraph 15 of the agreement, Plaintiff's claim must be dismissed. Section 15 covers amendment or modification. It provides,

> No amendment, modification, termination or waiver of any provision of this Agreement shall be effective unless the same shall be in writing and signed by you and a duly authorized member of our senior management. No consent to any departure by you from any of the terms of this Agreement shall be effective unless the same is signed by a duly authorized member of our senior management. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

Def.'s Ex. 1.

Despite this provision, the allegations in the FAC are sufficient to survive a motion to dismiss. Here, Plaintiff alleges that the parties agreed to the terms of the January 6, 2003, employment contract pending approval and execution of Plaintiff's new contract.

6

Here, the parties' intent is disputed, as are the facts.  These are matters that cannot be resolved by the Court on a motion to dismiss because Michigan case law supports that even with a written modification clause, parties can modify or waive such provisions.  See Quality Products & Concepts v. Nagel Precision, Inc.,666 N.W. 2d 251, 258 (Mich. 2003); Paxson v. Cass County Rd. Comm'n, 38 N.W.2d 315, 317 (Mich. 1949); Sines v. Superintendents of the Poor, 25 N.W. 485, 487 (Mich.1885).

The analysis of the argument put forth by Defendant turns in some measure on the facts.  Plaintiff has pleaded a cognizable claim.  Her position is that a new contact and/or implied granted her the same benefits until a new contract was executed.  Accordingly, her claim survives the request for dismissal.

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** dismissal of the claims arising out of the zero tolerance policy and **DENIES** the request to dismiss Plaintiff's breach of contract claim relative to the terms of her employment--salary, benefits.

**IT IS SO ORDERED.**

            s/Marianne O. Battani
            MARIANNE O. BATTANI
            UNITED STATES DISTRICT JUDGE


Date:   March 31, 2009

**CERTIFICATE OF SERVICE**

 Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

            s/Bernadette M. Thebolt
            Case Manager